# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **CESAR MOSS,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 2:10cv-766-MEF** |
| | ) | |
| **STATE OF ALABAMA DEPARTMENT** | ) | |
| **OF CORRECTIONS; et al.,** | ) | **(WO-Do Not Publish)** |
| | ) | |
| **DEFENDANTS.** | ) | |

## MEMORANDUM OPINION AND ORDER

Cesar Moss ("Moss") brings suit against his employer, the State of Alabama Department of Corrections ("ADOC") and others for alleged work-place discrimination and retaliation. He also brings various claims alleging violations of his constitutional rights.[1] This cause is before the Court on the Defendants' Motion for Summary Judgment and Brief in Support (Doc. # 23). For the reasons set forth below, the motion is due to be GRANTED.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 & 1343(a). Additionally, Defendants have not argued that the Court does not have personal jurisdiction over them. Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this district.

---

[1] Initially, Moss also brought claims pursuant to Alabama law, but he abandoned these claims when he failed to include them in the proposed pretrial order.

**STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(a), "a party may move for summary judgment, identifying each claim or defense — or the part of each claim of defense — on which summary judgment is sought." A court presented with such a motion must grant it "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute as to a material fact can only be found "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). According to the Supreme Court, "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (quotation omitted). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

After the movant satisfies this requirement, the burden shifts to "the adverse party [who] must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 250 (quotation omitted). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. The non-moving party "must do

2

more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The Eleventh Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the undisputed facts should be made in favor of the nonmovant, but an inference based on speculation and conjecture is not reasonable." *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) (citation omitted).

To the extent that any party submits argument in support of or in opposition to a motion for summary judgment, to establish that a fact either cannot be or is genuine, the party may only do so by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials. *See* Fed. R. Civ. P. 56(c)(1). While a court may consider other materials in the record, the Federal Rules of Civil Procedure only require the court to consider factual materials to which it has been properly referred by citation. *See* Fed. R. Civ. P. 56(c)(1) & (3). If a party fails to properly support an assertion or fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may, *inter alia*, consider the fact undisputed for purposes of the motion and grant summary judgment if the motion and supporting materials, including the facts considered undisputed, show that the movant is entitled to it. Fed. R. Civ. P. 56(e).

### FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted

in support of and in opposition to the motion.  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts relevant to the issues raised by Defendants' motion:

Moss is a black male.  On August 1, 2005, Moss began his full-time employment with the Alabama Department of Corrections ("ADOC").  As of the date of this Memorandum Opinion and Order, ADOC continues to employ Moss.  In 2008, ADOC assigned Moss to work at the Kilby Correctional Facility ("Kilby") as a Correctional Officer.

In February of 2008, the K-9 Unit at Kilby announced the availability of two openings in the unit.  One opening was a full-time position and the other was a part-time position.  The Kilby K-9 Unit includes handlers of both tracking dogs and drug dogs.  The openings at issue were for tracking dog handlers.  Assignment to the K-9 Unit is an administrative post assigned at the Warden's discretion.  The hiring process consisted of an interview with the Warden and a field test which involved the running of two practice tracking dog runs.  At the time, defendant John Cummins ("Cummins") served as the Warden at Kilby.

Moss and five others sought the two positions.  Defendant Bruce Vermilyer ("Vermilyer") and defendant Paul Rogers ("Rogers") conducted the practice tracking dog runs and evaluated the performance of the candidates during the runs.  These practice runs took place between February 25, 2008 and March 6, 2008.  On March 6, 2008, Rogers and Vermilyer issued a written finding summarizing the performance of the candidates and presented it to Cummins.  Vermilyer and Rogers ranked the performance of Paul McDonald

("McDonald") to be the best of the applicants.   Vermilyer and Rogers ranked the performance of Glenn McDaniel ("McDaniel") to be the second best of the applicants. Vermilyer and Rogers recommended that McDonald be hired as for the full-time position and that McDaniel be hired for the part-time position.  On March 12, 2008, Cummins selected McDonald for the full-time position and McDaniel for the part-time position.

On March 17, 2008, Moss filed a Step 1 Grievance in which he complained about the fact that he was not selected for either position in the K-9 Unit.  Moss argued that neither McDonald, nor McDaniel should have been eligible for the positions because they had not worked for ADOC for at least twelve months which Moss believed was a requirement for the positions.  On March 26, 2008, Cummins issued his decision rejecting Moss's Step 1 Grievance.    On April 3, 2008, Moss filed a Step 2 Grievance.  In addition to contending that McDonald and McDaniel lacked a requisite amount of experience with ADOC to be considered for the positions with the K-9 Unit.  Moss also raised concerns about possible nepotism in the selection process.   Regional Coordinator Roy Hightower ("Hightower") considered Moss's Step 2 Grievance.  On May 29, 2008, Hightower instructed Cummins to replace McDaniel with Moss.  On May 29, 2008, Cummins prepared a memorandum to Moss advising him that he had been selected to fill a vacancy in the K-9 Unit.  Cummins directed Moss to report to the K-9 Unit for work on Tuesday, June 3, 2008.  Moss received this notice on June 3, 2008, and began working in the K-9 Unit on that date.  He continues to be employed in that position.

On June 10, 2008, Moss filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  In this Charge, Moss declared under penalty of perjury that he believed that the failure to promote him to the K-9 Unit position on March 12, 2008 constituted discrimination against him on the basis of his race in violation of Title VII.  Moss further declared that he had filed a grievance with his employer, but that nothing had been done about it.  On June 16, 2008, the EEOC mailed a Notice of Charge of Discrimination to Cummins advising him that Moss had filed an EEOC Charge of Discrimination and soliciting a response from ADOC.

On January 17, 2009, Moss was involved in an incident which resulted in a written reprimand.  Moss notified Rogers at 4:40 p.m. on January 17, 2009, that he did not have his weapon.  Moss told Rogers he believed he had left it in the glove compartment of a loner truck on January 14, 2009 while attending training classes at Kilby.  Moss's gun was in fact in the glove compartment of the loaner truck.  Rogers found it at 6:00 p.m. on January 17, 2009.  During the time the weapon was left in the unattended truck, it was accessible to inmates working in the garage.  On March 3, 2009, Cummins issued a written reprimand relating to this incident.  Moss signed it on March 5, 2009.  On March 12, 2009, Moss submitted a written rebuttal in which he had violated procedures.  Moss stated that he felt a warning would be more appropriate than a reprimand because he was on probation and learning a new position and because he believed it to be excessive punishment.  Finally, Moss stated that he believed that "retaliation is being shown because of a previous

6

complaint/grievance that [he] filed."  Doc. # 23-9.

On March 17, 2009, Moss received a formal performance appraisal.  He received an overall rating of "Meets Standards."  The March of 2009 written reprimand did have a negative effect on this performance appraisal.

On April 2, 2009, the EEOC mailed Moss a Dismissal and Notice of Rights.  The EEOC informed Moss it was closing its file on his June 2008 Charge of Discrimination because based on its investigation the EEOC was unable to conclude that the information obtained establishes violations of the statutes.  The Dismissal and Notice of Rights made very plain that Moss must file any lawsuit based on the Charge of Discrimination within ninety days from his receipt of the Dismissal and Notice of Rights otherwise his right to sue based on the charge would be lost.  Moss admits that he failed to file a lawsuit within the required ninety days after receiving the Dismissal and Notice of Rights.

On July 2, 2009 and July 6, 2009, Moss did not report to work.  He did not have his supervisor's approval to be on leave on either day.  July 3, 2009 was a state holiday.  Pursuant to ADOC and State of Alabama Personnel Rules, an employee must be on work status the day before a holiday and the day after the holiday to receive credit for the holiday.  ADOC charged Moss with three days of Leave Without Pay as a result of his unexcused absences on July 2, 3, and 6.  Leave Without Pay is not a disciplinary process; it is a payroll policy.

On July 15, 2009, Cummins started the paperwork to ADOC's Personnel Division for

a three-day suspension on Moss for the unexcused absences/failure to report to work on July 2 and 6. The ADOC Personnel Division must approve disciplinary suspensions of ADOC employees. After the ADOC Personnel Division approves a disciplinary suspension, the Regional Coordinator and Associate Commission over Institutions must both approve such a recommendation before it is presented to the employee. On September 22, the ADOC Personnel Director recommended a three-day suspension of Moss for taking leave without approval. On September 23, 2009, Hightower, the Regional Coordinator recommended a three-day suspension of Moss. On September 25, 2009, Associate Commissioner DeLoach approved the three-day suspension of Moss. On October 1, 2009, Cummins gave Moss a Notice of Intent to Recommend the three-day suspension. On this same day, Cummins also gave Moss a written reprimand for failing to follow his supervisor's instructions on July 22, 2009.

On July 22, 2009, Moss refused instructions to sign his timecard given by his supervisor, Rogers, and Cummins. On August 7, 2009, Moss submitted a grievance concerning his having been given Leave Without Pay status for July 2, 3, and 6. He filed this grievance directly to Richard Allen ("Allen"), who was then the Commissioner of ADOC. By so doing, Moss started this grievance at step three of the three-step grievance process.

On November 20, 2009, Moss filed a new EEOC Charge of Discrimination. Moss states in his Charge that he claims that ADOC withheld pay from him in retaliation for the filing of his prior EEOC Charge. Moss does not provide specifics in his Charge, instead he

8

adopts by reference the allegations contained in a letter from his attorney.  In this letter, his counsel contends that the three-day suspension constituted race discrimination and retaliation.

On December 16, 2009, Moss received a full hearing in front of Hearing Officer Willie Thomas on the issue of his having taken leave without approval.  Moss's counsel represented him at the hearing.  The Hearing Officer found Moss guilty and recommended the imposition of the three-day suspension.  On January 19, 2010, defendant Allen, then the Commissioner of the ADOC, imposed the three-day disciplinary suspension.

On January 7, 2010, Moss received his annual performance appraisal.  He received a 28.50 - "Exceeds Standard" rating, which was the higher than any score he had previously received in an ADOC performance appraisal.  On March 25, 2010, Cummins and Rogers gave Moss a formal Letter of Commendation lauding his performance in tracking a burglary suspect.

On July 1, 2010, Moss received his Dismissal and Notice of Rights from the EEOC on his second Charge of Discrimination.  On September 10, 2010, Moss filed suit in this Court against ADOC, Allen, Holt , Vermilyer, and Rogers.  Initially, Moss brought claims pursuant to Alabama law as well as federal claims, but counsel for Moss omitted the state law claims from the submissions for the pretrial order and indeed stated very clearly the nature of Moss's claims at the final pretrial conference.  Consequently, the only claims which Moss has not abandoned arise pursuant to federal law, because Moss's counsel abandoned the

9

claims pursuant to Alabama law.  Furthermore, counsel for Moss initially invoked the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12102, *et seq.* ("ADA"), in the Complaint, but alleged no facts in support of claims under that statute.  The Court previously entered partial summary judgment in favor of all defendants as to any claims pursuant to the ADA.  Additionally, while Moss initially named Vermilyer as a defendant in this action, he failed to perfect service on Vermilyer.  Consequently, the Court dismissed all claims against Vermilyer without prejudice on June 15, 2011.

As of the date of this Memorandum Opinion and Order, Moss' only remaining claims in this lawsuit are as follows: (1) racial discrimination arising from the failure to promote Moss on March 12, 2008, to one of the two positions in the K-9 Unit for which he applied;[2] (2) racial discrimination with respect to disciplinary actions and enforcement of policies after he received a position on the K-9 Unit on June 3, 2008; and (3) retaliation against him after he engaged in the protected conduct of filing a Charge of Discrimination with the EEOC on June 10, 2008.[3]  Moss brings these claims pursuant to Title VII.  Additionally, he contends that the failure to promote him in March of 2008 constituted a violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution to due process; presumably Moss brings these claims pursuant to 42 U.S.C. § 1983.  He also contends that

---

[2]  This claim includes a challenge to the selection process and aptitude testing used in the selection process.

[3]  The alleged retaliation took the form of discrete disciplinary acts and a generally hostile working environment.

both 42 U.S.C. § 1981 and 42 U.S.C. § 1983 afford him a remedy for his above-referenced claims.  Finally, he contends that defendants violated his rights under the First Amendment to the United States Constitution.   Specifically, he contends that during the field testing component of the selection process for the two K-9 Unit positions, he talked back to one of the people conducting the test and this caused him not to be selected for the positions in March of 2008.  He seeks a remedy for this alleged constitutional violation pursuant to 42 U.S.C. § 1983.

## DISCUSSION

## I.  Claims Pursuant to Title VII

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a).  The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent.  *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993).  Title VII also prohibits an employer from retaliating against an employee for reporting discrimination. 42 U.S.C. §§ 2000e3(a).[4]

---

[4]  42 U.S.C. § 2000e3(a) bars retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

## A. Administrative Prerequisites To Suit Pursuant To Title VII

Prior to bringing suit pursuant to Title VII, a plaintiff must file a timely charge of discrimination with the EEOC and file suit within a specified time after the receipt of a right to sue letter from the EEOC. Title 42 U.S.C. § 2000e-(5)(e)(1) specifies the prerequisites that a plaintiff must satisfy before filing a private civil action. *See National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002). According to this provision, "[a] charge...shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred[.]" 42 U.S.C.§ 2000e-(5)(e)(1). *Accord, Pijnenburg v. West Ga. Health Sys., Inc.,* 255 F.3d 1304, 1305 (11th Cir.), *reh'g denied,* 273 F.3d 1117 (11th Cir. 2001) ("It is settled law that in order to obtain judicial consideration of a [Title VII] claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred."). This requirement guarantees "the protection of civil rights laws to those who promptly assert their rights" and "also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State Coll. v. Ricks,* 449 U.S. 250, 256-57 (1980).

The United States Supreme Court has explained that "strict adherence" to this procedural requirement "is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 (1980). By choosing this relatively short deadline, "Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." *Id.* Indeed, this procedural rule is not a mere technicality, but

an integral part of Congress' statutory scheme that should not "be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 152 (1994). Thus, if a plaintiff fails to file an EEOC charge before the 180-day limitations period, the plaintiff's subsequent lawsuit is barred and must be dismissed for failure to exhaust administrative remedies. *See, e.g., Morgan,* 536 U.S. at 113 ("[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *Brewer v. Alabama,* 111 F. Supp. 2d 1197, 1204 (M.D. Ala. 2000).[5]

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Morgan,* 536 U.S. at 113.

Of course, the determination of whether a plaintiff has filed a timely EEOC Charge

---

[5] Title VII's time limit on filing a Charge of Discrimination with the EEOC is not jurisdictional. Instead, it is akin to a statute of limitations and is subject to waiver, estoppel and equitable tolling. *See, e.g., Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 3939 (1982). Equitable tolling allows a plaintiff to avoid the bar of the limitations if, despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim. Equitable estoppel in this context prevents a defendant from asserting untimeliness where the defendant has taken active steps to prevent the plaintiff from filing a *timely* Charge of Discrimination with the EEOC. No party has alleged that this case involves waiver, equitable tolling or equitable estoppel.

depends on when the alleged unlawful employment practice "occurred."  The United States

Supreme Court has provided further clarification of the nature of this inquiry and set forth

different standards for claims involving "discrete acts" and "hostile environment"

allegations.  *See generally*, *Morgan,* 536 U.S. 101.  In cases involving discrete discriminatory

acts, such as termination of employment, failure to promote, denial of transfer, or refusal to

hire, a discrete discriminatory act occurs on the day that it happens.  *Morgan,* 536 U.S. at

110-16.  More specifically,

> [t]he 180-day filing period begins to run from "[a] final decision
> to terminate the employee." *Cocke v. Merrill Lynch & Co., Inc.,*
> 817 F.3d 1559, 1561 (11th Cir. 1987).  And a "final decision"
> to terminate, "rather than actual termination, constitutes the
> 'alleged unlawful practice' that triggers the filing period.  Thus,
> the 180-day period is counted from the date the employee
> receives *notice* of the termination." *Id.* (internal citations
> omitted) (emphasis added).

*Wright v. AmSouth Bancorporation,* 320 F.3d 1198, 1201 (11th Cir. 2003).  "Moreover, the

180-day charge filing period does not run until the plaintiff is told that she is actually being

terminated, not that she *might* be terminated *if* future contingencies occur."  *Stewart v.*

*Booker T. Washington Ins.,* 232 F.3d 844, 849 (11th Cir. 2000) (emphasis in original).

> Beginning the charge-filing period any earlier would make little
> sense: to require a plaintiff to file a discriminatory termination
> charge with the EEOC prior to the receipt of notice of
> termination would be to require a filing prior to the occurrence
> of the discriminatory conduct, thereby charging the EEOC with
> responsibility for the arguably advisory task of investigating a
> hypothetical case of discrimination.

14

*Id.*

Unlike claims involving discrete discriminatory acts, hostile environment claims may be litigated so long as at least one of the events contributing to the hostile environment was presented to the EEOC in a Charge of Discrimination in a timely fashion.  Indeed, in *Morgan*, the United States Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period."  *Morgan,* 536 U.S. at 106.

A court faced with a challenge to an employment discrimination plaintiff's ability to litigate certain claims must start by ascertaining the permissible scope of a judicial complaint.  This task requires the Court to first review the Charge of Discrimination that the plaintiff filed with the EEOC.  *See, e.g., Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985); *Robinson v. Regions Finan. Corp.*, 242 F. Supp. 2d 1070, 1079 (M.D. Ala. 2003).  No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely filed EEOC charge.  *See, e.g., Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000); *Robinson*, 242 F. Supp. 2d at 1079.  "Not all acts complained of, however, need have been included in the EEOC charge; rather, an employee may include in her lawsuit a claim for injury resulting from any practice which 'was or should have been included in a reasonable investigation of the administrative complaint.'" *Robinson,* 242 F. Supp. 2d at 1079 (citing *Griffin*, 755 F.2d at 1522).  "Thus, an employee's

15

lawsuit is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of a charge of discrimination." *Robinson*, 242 F. Supp. 2d at 1079 (citing *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  Furthermore, "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981)[6]; *see also Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 168-69 (11th Cir. 1988) (following *Gupta*).

### B.  Requirements For Timely Filing of Suit

Under Title VII, a plaintiff must bring suit within 90 days of receiving a right-to-sue letter from the EEOC.  42 U.S.C. § 2000e–5(f)(1).  *See also Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991) (Title VII "requires that suit be brought within 90 days after receipt of notice of right to sue.")  Dismissal is appropriate when the plaintiff fails to file his lawsuit within 90 days of receiving a right-to-sue letter, unless he shows that the delay was through no fault of his own.  *See, e.g., Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150 (1984); *Zillyette v. Capital One Fin. Corp.*, 179 F.3d 1337, 1339–41 (11th Cir. 1999).  Once the defendant contests the issue, the plaintiff bears the burden of establishing that she filed her claim within 90 days of receiving the notice.  *See,*

---

[6]  In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. Nov. 3, 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*e.g., Green v. Union Foundry Co.,* 281 F.3d 1229, 1234 (11th Cir. 2002); *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

**C.  Moss Failed To Preserve His Right to a Remedy Under Title VII for Some Claims**

Defendants contend that Moss has lost his right to pursue a remedy under Title VII for many of his claims because he failed to timely file his charge of discrimination and because he failed to file suit within ninety days of receiving his first notice of his right to sue from the EEOC.  Counsel for Moss failed to respond to these arguments.  The Court agrees that Moss has failed to properly preserve his ability to litigate certain claims pursuant to Title VII.  Moss's most prominent complaints in this lawsuit arise out of the defendants' failure to select him for either of the two vacancies in the K-9 Unit and the testing and decision-making process defendants used to fill those vacancies.  It is undisputed that the decision-making process began in early 2008 and ended on March 12, 2008 with the announcement that McDonald and McDaniel had been selected for the positions.  Moss timely filed a Charge of Discrimination with the EEOC complaining that he had been discriminated against on the basis of his race when he had not be selected on March 12, 2008.  It is undisputed, however, that Moss received his Dismissal and Notice of Right to Sue for the events about which he complained in that June 2008 Charge of Discrimination in early April of 2009. Nevertheless, he waited more than a full year before he filed this lawsuit.  Moss's failure to file suit within ninety days of receiving the notice of his right to sue precludes him from

17

seeking a remedy pursuant to Title VII for any alleged actions about which he complained in that first Charge of Discrimination. Moss's reiteration of those same complaints in his November 20, 2009 Charge of Discrimination does not revive Moss's claims regarding this failure to promote claim. Because the events occurred more than one-hundred-eighty days before the date on which Moss filed his second Charge of Discrimination with the EEOC and because the nature of the alleged discrimination is a discrete act, Moss's second Charge of Discrimination is not a timely administrative exhaustion of those claims. Accordingly, the defendants' motion for summary judgment is due to be GRANTED as to Moss's claims pursuant to Title VII for alleged race discrimination with respect to the selection of candidates other than Moss for the K-9 Unit positions in March of 2008.

On November 20, 2009, Moss filed his second Charge of Discrimination, which adopts by reference the letter from his attorney outlining the nature of his complaints. To the extent that Moss complains of discrete acts of discrimination or retaliation in this Charge of Discrimination, those acts must have occurred in the 180 prior to the filing of the Charge of Discrimination. Thus, this Charge is timely as to events which occurred after May 24, 2009. This means that the disciplinary action taken against Moss in March of 2009 for the January 14, 2009 incident involving his unsecured weapon has not been the subject of a timely Charge of Discrimination with the EEOC and is not actionable pursuant to Title VII. The other two disciplinary incidents of which Moss complains, the reprimand for failing to follow his supervisors instructions relating to his time card on July 22, 2009 and his disciplinary

18

suspension resulting from the July2 through July 6 attendance issue are timely preserved by the filing of the second Charge of Discrimination and can be pursued pursuant to Title VII. To the extent that defendants motion for summary judgment is predicated on the timeliness of his suit and his Charges of Discrimination, it is due to be GRANTED in part and DENIED in part.

### D.  Title VII Does Not Permit Claims Against Individual Defendants

To the extent that Moss purports to bring his claims pursuant to Title VII against Allen, Holt, Cummins, and Rogers in their individual capacities, defendants' motion for summary judgment is due to be GRANTED on such claims.  It is well-settled that Title VII does not authorize suits against individuals. *See Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991).  "The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act." *Id.*  This Court is bound by this rule of law.  All Title VII claims against any defendant other than ADOC are due to be DISMISSED.

### E. Substantive Analysis of Moss's Remaining Race Discrimination Claims Under Title VII

Under Title VII, a plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).  Discriminatory intent can be established through a variety of means. *See, e.g., Davis v. Qualico Miscellaneous Inc.,* 161 F. Supp. 2d 1314, 1319 (M.D.

19

Ala. 2001).  Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence[7] of the employer's intent, the Court applies some version of the familiar tripartite burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and its progeny.

Under this framework, the plaintiff has the initial burden of establishing a *prima facie* case of discrimination.  *See, e.g., Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045 (1998).  The purpose of the *prima facie* case is to show an adverse employment decision that resulted from a discriminatory motive.  *See, e.g., Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1143 (11th Cir. 1983).  Once a plaintiff establishes the requisite elements of the *prima facie* case, the defendant has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action.  *See, e.g., Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir. 1997) (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981)).  The employer's burden is "exceedingly light."  *Holifield,* 115 F.3d at 1564.  This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason.  *See, e.g., Davis,* 161 F. Supp. 2d at 1321.

If such a reason is produced, a plaintiff then has the ultimate burden of proving the

---

[7]     Because Moss offers nothing which could conceivably be considered direct evidence or statistical evidence in support of any of his claims, the Court will analyze this motion for summary judgment under the circumstantial evidence paradigm.

reason to be a pretext for unlawful discrimination.  *See, e.g., Holifield,* 115 F.3d at 1565;
*Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997) (plaintiff "has the
opportunity to discredit the defendant's proffered reasons for its decision").  Thus, once the
employer articulates a legitimate, non-discriminatory reason, the burden returns to the
employee to supply "evidence, including the previously produced evidence establishing the
*prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons
given by the employer were not the real reasons for the adverse employment decision."
*Davis,* 161 F. Supp. 2d at 1322 (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th
Cir. 2000) (*en banc*)).  The plaintiff may seek to demonstrate that the proffered reason was
not the true reason for the employment decision "either directly by persuading the court that
a discriminatory reason more likely motivated the employer or indirectly by showing that the
employer's proffered explanation is unworthy of credence."  *Burdine,* 450 U.S. at 256;
*Combs,* 106 F.3d at 1528.  A plaintiff's *prima facie* case, combined with sufficient evidence
to find that the employer's asserted justification is false, may permit the trier of fact to
conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumbing Prods.,
Inc.,* 530 U.S. 133, 148 (2000).

A plaintiff can establish a prima facie case by showing that: (1) he was a member of
a protected class; (2) he was qualified to do the job; (3) he was subjected to an adverse
employment action by his employer; and (4) similarly situated employees outside of the
protected class were treated more favorably.  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079,

1087 (11th Cir. 2004).  Nevertheless, the prima facie case formulation is flexible and often dependent on the particular facts of a case.  *Id.*  Thus, the articulation of the *prima facie* case may vary from a case involving a failure to promote to a case involving termination of employment.  Defendants contend that Moss has failed to satisfy his burden of proffering evidence for which a reasonable jury could find that he has satisfied a *prima facie* case of race discrimination with respect to any of the alleged adverse employment actions taken against him after he was placed into the position in the K-9 Unit on June 3, 2008.[8]  Assuming *arguendo* that all of the disciplinary actions taken against him constituted adverse employment actions,[9] Moss simply failed to point to any evidence from which a reasonable jury could find that his employer treated similarly-situated employees outside of his protected class more favorably than it treated him with respect to the application of disciplinary

---

[8]   The Court recognizes that it has held that the timing of Moss's second EEOC Charge of Discrimination limits the claims of race discrimination retaliation that he can pursue in this case using Title VII to events which occurred after May 24, 2009, but even assuming that all of the events after June 3, 2008 were actionable, the Court would be inclined to grant the pending summary judgment motions because Moss has failed to establish a *prima facie* case of race discrimination with respect to the events after he was promoted to the K-9 Unit.

[9]   The Court has serious reservations about finding that any of the disciplinary actions taken against Moss after he began working on the K-9 Unit actually rise to the level of an adverse employment action for purposes of a *prima facie* case of race discrimination, except for the suspension he received as a punishment for the leave he took in early jury of 2009. Accordingly, the Court assumes, for the sake of argument only, that this element of the *prima facie* is satisfied.

22

actions. It is his burden to do so, and he has failed to satisfy that burden.[10] Thus, the motion

for summary judgment is due to be GRANTED as to such claims.

Title VII has also been recognized to provide employees with a remedy for work place

harassment on the basis of race.[11] This type of claim has its own requirements which will be

discussed below. It has long been recognized that "[t]he phrase terms, conditions, or

privileges of employment evinces a congressional intent to strike at the entire spectrum of

disparate treatment of men and women in employment, which includes requiring people to

work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 21 (1993) (internal citations omitted). To establish a claim that he was subjected

to a racially hostile work environment, Moss must need to show that (1) he belongs to a

protected group; (2) he has been subject to unwelcome harassment; (3) the harassment was

based on a protected characteristic of the employee, such as race; and (4) the harassment was

sufficiently severe or pervasive to alter the terms and conditions of employment and create

---

[10] The only specific evidence to which Moss points in his opposition to the motion for summary judgment relates to his claims arising out of the failure to promote him in March of 2008. He points to no evidence whatsoever from which a reasonable jury could find support for any of his other claims including his claims of race discrimination after he was promoted to the K-9 Unit in June of 2008. While Moss's counsel has submitted the entire transcript of Moss's deposition, the Court has only considered the specific pages to which she cited in her brief. It is simply not this Court's job to cull through the entire deposition transcript searching for evidentiary support Moss's counsel has failed to identify. This is especially true, where as here, Moss's counsel failed to timely and properly submit any evidence at all along with her brief and had to seek leave of court to file it out of time.

[11] It is not entirely clear that this claim was included in the Complaint, however, it was included in Moss's contentions for the pretrial order which supplanted the Complaint.

a discriminatorily abusive working environment; and (5) the employer is responsible for the hostile environment under a theory of vicarious or direct liability. *Miller v. Kenworth of Dothan, Inc.,* 277 F.3d 1269, 1275 (11th Cir. 2002). An employee claiming hostile environment must proffer evidence from which a reasonable jury could find that he experienced a workplace "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). As a matter of law, the Court finds that Moss has offered insufficient evidence from which a jury could find that he has established such a claim. For this additional reason, the motion is due to be GRANTED with respect to Moss's hostile environment claims.

### F. Substantive Analysis of Moss's Remaining Retaliation Claims Under Title VII

As previously noted, Title VII provides a cause of action to those who have been retaliated against in violation of the statute. The applicable legal paradigm for such retaliation claims is similar, but not identical, to the burden shifting paradigm applicable to discrimination claims brought pursuant to Title VII. "Title VII's anti-retaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing." *Burlington Northern & Santa Fe R.Y. Co. v. White*, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e-3(a)). The term "discriminate against" has been found to refer to "distinctions or differences in

24

treatment that injure protected individuals." *Id.* at 59-60 (collecting cases).  Thus, to establish a *prima facie* case of retaliation forbidden by Title VII, the plaintiff must normally show that: "(1) [he] participated in an activity protected by Title VII; (2) [he] suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 587 (11th Cir. 2000) (setting forth *prima facie* elements).  The defendants do not dispute that the first element is satisfied by Moss's filing of his first Charge of Discrimination with the EEOC on June 10, 2008.

The Court finds that under the applicable legal standard, a reasonable jury could find that any of the disciplinary actions which Moss contends constituted retaliation were adverse employment actions as the Supreme Court has defined that term for retaliation claims.  Until 2006, the decisions of the Eleventh Circuit Court of Appeals addressing the degree of materiality required for an event or act to constitute an adverse employment action in the context of a retaliation claim required a similar degree of materiality as claims of discrimination.  However, in 2006, the United States Supreme Court changed this standard when it concluded that Title VII's substantive provision and its anti-retaliation provision are not coterminous.  *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. at 67.  The Supreme Court has held that in order to sustain a Title VII retaliation claim, an employee must show that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from

25

making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. at 67-68 (internal citations and quotations omitted). Thus, the protection provided against retaliation is protection against employer actions that are likely to deter victims of discrimination from complaining to the EEOC, rather than petty slights, minor annoyances, or a lack of good manners. *Id.* at 68.

Thus, the key inquiry in this case is whether there exists a causal connection between the adverse employment actions[12] and Moss's protected conduct. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta,* 212 F.3d at 590 (internal citation & alteration omitted). "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker." *Walker v. Prudential Prop. & Cas. Ins. Co.,* 286 F.3d 1270, 1274 (11th Cir. 2002) (internal citations omitted).

In response to the summary judgment motion, Moss fails to point to any direct evidence linking the adverse employment actions to which he points and any intent on the part of ADOC or any of its employees or officials to discriminate against him. Consequently,

---

[12]  Moss relies upon the March 2009 written reprimand he received relating to the mishandling of his weapon in January of 2009, the October 1, 2009 written reprimand for failing to following his supervisor's instructions in late July of 2009, and the events relating to the handling of his absences from work on July 2 through July 6, 2009, which included charging him with leave without pay and a later disciplinary suspension.

the Court will next consider if any circumstantial evidence establishes a causal link between the two.  Moss argues the fact that these disciplinary actions occurred after ADOC knew he had filed a Charge of Discrimination with the EEOC establishes his case.  This is not true. Close temporal proximity between the protected conduct and the adverse action can constitute sufficient circumstantial evidence of causation in some, but not all, circumstances. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is *insufficient* to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244-45 (11th Cir. 2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Keel v. United States Dep't of Air Force,* 256 F. Supp. 2d 1269, 1291 (M.D. Ala. 2003) (more than seven month gap between protected conduct and allegedly retaliatory conduct was insufficient as a matter of law to establish the causation element of the *prima facie* case of retaliation).  For the temporal proximity to suffice to establish the causal connection prong of the *prima facie* case, the employers' discovery of the protected conduct must immediately precede the adverse action for the negative inference to attach.  *Id.*  Where, as here, more than seven months elapsed between Moss's protected conduct and the first of several alleged acts of retaliatory disciplinary actions, the timing presents no circumstantial evidence that the

alleged adverse employment action was caused by the employer's desire to retaliate against its employee because of the protected conduct.  Simply put, Moss offers no evidence of causation to satisfy the final element of the *prima facie* case because he presents no evidence from which a reasonable jury could find that any of the disciplinary actions taken against him after June of 2008 resulted from retaliatory animus.

## II. § 1981 Claims Against State or Its Officials Must Be Brought Through §1983

Moss invokes both 42 U.S.C. § 1981 and 42 U.S.C. § 1983 as grounds for his claims in this action.  Section 1981 provides that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, given evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exaction of every kind, and to no other.

42 U.S.C. § 1981(a).  For purposes of Section 1981 the words "make and enforce contracts" includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).[13]  Section 1981 prohibits discrimination under color of State law and

---

[13]      In 1991, Congress passed the Civil Rights Act of 1991, which amended Section 1981 in response to the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164 (1989).  In *Patterson*, the Supreme Court had held that Section 1981 did not address discriminatory conduct that occurred after the making of the contract which did not interfere with the plaintiff's enforcement of his or her contractual rights.  The Civil Rights Act of 1991 amended Section 1981 to broaden the definition of "make and enforce contracts" to include "the enjoyment of all benefits, privileges, terms, and conditions of the contractual

non-governmental discrimination.  *See* 42 U.S.C. § 1981(c).

It is the law of this Circuit that § 1981 claims have been "effectively merged into the section 1983 claim for racial discrimination."  *Busby*, 931 F.3d at 771 n.6.  This occurs because "the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor."  *Id.* (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 735 (1989)).  *See also Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (holding that any relief available under § 1981 was duplicative of that available under § 1983).

"Congress intended that the explicit remedial provisions of § 1983 be controlling in the context of damages actions brought against state actors alleging violations of the rights declared in § 1981."  *Jett*, 491 U.S. at 731.  Consequently, when state actors violate a person's rights declared in § 1981, that person may only seek a remedy by bringing suit pursuant to § 1983.  Thus, to the extent that Moss alleges violations of his rights pursuant to § 1981 to be free from discrimination on account of his race, he may only seek a remedy for those alleged violations of his statutory rights by bringing suit pursuant to § 1983.  Thus, all of Moss's claims pursuant to § 1981 will be analyzed below as part of his claims pursuant to § 1983.

---

relationship."

### III. Claims Pursuant To 42 U.S.C. § 1983

Section 1983 provides a remedy when a person acting under color of state law deprives a plaintiff of a right, privilege, or immunity secured by the Constitution, laws, or treaties of the United States. *See, e.g.,* 42 U.S.C. § 1983[14]; *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("§ 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred") (internal quotes omitted) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n.3 (1979)); *Cummings v. DeKalb County*, 24 F.3d 1349, 1355 (11th Cir. 1994). Defendants advance a variety of arguments for the dismissal of Moss's claims pursuant to § 1983. Those arguments are discussed individually below.

### A. Claims Regarding the Failure to Hire Moss to the K-9 Unit Prior to June of 2008

While § 1983 does not provide an explicit statute of limitations, it is well settled that cases filed in Alabama pursuant to § 1983 are subject to a two year statue of limitations. *See, e.g., Owens v. Okure,* 488 U.S. 235 (1989); *Lufkin v. McCallum,* 956 F.2d 1104, 1106 (11th

---

[14] Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Cir.), *cert. denied,* 506 U.S. 917 (1992) (§ 1983 cases in Alabama borrow the two year statute of limitations); *Parrish v. City of Opp, Ala.,* 898 F. Supp. 839, 842 (M.D. Ala. 1995) (same).

Most of Moss's claims pursuant to 42 U.S.C. § 1983 are barred by the applicable two-year statute of limitations. Moss's Complaint was filed on September 10, 2010. Accordingly, the statute of limitations bars all claims which arose prior to September 10, 2008. This means that none of Moss's claims about the process used to fill the K-9 Unit positions in early 2008 are actionable because they arose on or before March 12, 2008, a date more than two years before the date on which Moss filed suit. Thus, the applicable two-year statute of limitations bars all of Moss's claims of race discrimination arising from the failure to promote him to the K-9 Unit on March 12, 2008, including his claims relating to the selection process. Additionally, the applicable two-year statute of limitations bars all of his claims of alleged violations of his rights to due process under the Fifth and Fourteenth Amendments, which also arise out of the failure to promote him. Moreover, the applicable two-year statute of limitations bars all of his claims of alleged violations of his rights under the First Amendment, which also arise out of the failure to promote him, allegedly in retaliation for things he said during the evaluation process for the selection of employees for the K-9 Unit. Because the statute of limitations bars these claims, the defendants' motion for summary judgment is due to be GRANTED as to these claims.

### B.  Retaliation Claims Under § 1983

The analysis of such claims is identical to the substantive analysis of such claims

under Title VII.  Accordingly, for the reasons set forth above, the defendants are entitled to summary judgment on these claims as well.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1) The Defendants' Motion for  Summary Judgment and Brief in Support (Doc. # 23) is GRANTED.

(2)  The trial scheduled in this matter is CANCELLED.

(3) A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

DONE this the 2nd day of September, 2011.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE